**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| KLEINBARD LLC, | : | No. 101 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 204 CD |
| | : | 2022 entered on April 25, 2023 |
| v. | : | Affirming the Order of the Lancaster |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. CI-21-06142 |
| THE OFFICE OF THE DISTRICT | : | entered on February 17, 2022. |
| ATTORNEY OF LANCASTER COUNTY; | : | |
| HEATHER ADAMS, IN HER OFFICIAL | : | ARGUED:  May 14, 2024 |
| CAPACITY AS DISTRICT ATTORNEY OF | : | |
| LANCASTER COUNTY; LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| JOSHUA PARSONS, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| CHAIRMAN OF THE LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| RAY D'AGOSTINO, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| VICE-CHAIRMAN OF THE LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| CRAIG LEHMAN, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| LANCASTER COUNTY COMMISSIONER; | : | |
| BRIAN HURTER, IN HIS OFFICIAL | : | |
| CAPACITY AS LANCASTER COUNTY | : | |
| CONTROLLER; AND CHRISTINA | : | |
| HAUSNER, IN HER INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| FORMER LANCASTER COUNTY | : | |
| SOLICITOR, | : | |
| | : | |
| Appellees | : | |

**OPINION**

**JUSTICE DOUGHERTY**  DECIDED: December 17, 2024

We granted discretionary review to consider whether the Commonwealth Court correctly sustained preliminary objections and rejected as a matter of law the claim of a law firm to payment for services rendered to a county's district attorney. The panel below determined the contract for legal services was void *ab initio* pursuant to certain provisions of the County Code and dismissed the corresponding counts of the lawsuit. Our review reveals the panel erred when it failed on preliminary objections to take certain operative allegations in the complaint as true, and accordingly, we reverse and remand to the Commonwealth Court for further proceedings.

I.

The matter arises from a power struggle between Craig Stedman, the former District Attorney of Lancaster County,[1] and the county's board of commissioners. Stedman, in his role as District Attorney, sought to obtain from the county and use certain assets obtained by law enforcement authorities through forfeiture.[2] The commissioners balked, and ultimately, Stedman hired appellant Kleinbard LLC to file suit against the county commissioners, the county controller, and then-Attorney General Josh Shapiro, seeking declaratory and injunctive relief. Kleinbard and Stedman executed an

---

[1] Stedman is now a judge on the Lancaster County Court of Common Pleas.

[2] *See generally* 42 Pa.C.S. §5803 (asset forfeiture). Specifically, Section 5803(f) provides that forfeited property "shall be transferred to the custody of the district attorney, if the law enforcement authority seizing the property has local or county jurisdiction," and the district attorney may "retain the property for official use[.]" *Id.* at §5803(f). Section 5803(g) further provides these funds "shall be placed in the operating fund of the county in which the district attorney is elected. The appropriate county authority shall immediately release from the operating fund, without restriction, a like amount for the use of the district attorney for the enforcement of or prevention of a violation of the provisions of The Controlled Substance, Drug, Device and Cosmetic Act. The funds shall be maintained in an account or accounts separate from other revenues of the office. The entity having budgetary control shall not anticipate future forfeitures or proceeds from future forfeitures in adoption and approval of the budget for the district attorney." *Id.* at §5803(g).

engagement letter stating the firm was representing him "'in his official capacity as District Attorney of Lancaster County,' in connection with legal matters related to the District Attorney's Office, including the prosecution and litigation of the Commissioners' Encroachment Lawsuit." Complaint at ¶84, *quoting* Engagement Letter, 3/8/19 at 1. Kleinbard further averred in the letter that it was not representing Stedman in his "personal capacity, nor in [his] capacity as a candidate for any office." Engagement Letter, 3/8/19 at 1.[3] The engagement letter stated Stedman agreed to compensate Kleinbard for legal services at the firm's "prevailing hourly rates for the legal services rendered by [its] attorneys or paralegals[,]" which ranged at the time from $295 to $735, as well as costs and expenses. *Id*. at 1-2.

At the time, the commissioners had appropriated to the District Attorney's Office a line-item budget amount of $5,000 for legal services. The commissioners published a letter stating they would not approve payment of costs or legal fees incurred by Stedman beyond that budgeted amount because, in the commissioners' view, the lawsuit against them sought "damages personal to" Stedman and, as such, "no taxpayer or drug forfeiture funds should be used to pay for [Kleinbard's] representation of" Stedman. Letter from County Solicitor to Mark Seiberling, 3/7/19 at 3. Kleinbard eventually invoiced the District Attorney's Office for legal fees in excess of $100,000 for services rendered between March 2019 and December 2019. Days before resigning as District Attorney, Stedman submitted a voucher to the county controller requesting payment of $74,193.06[4] in legal

---

[3] The lawsuit was originally filed in Commonwealth Court, but the court determined on preliminary objections that it lacked subject matter jurisdiction. *See Stedman v. Lancaster Cty. Bd. of Comm'rs*, 221 A.3d 747 (Pa. Cmwlth. 2019) (*en banc*). The matter was then transferred to the court of common pleas, but the newly-elected district attorney chose to discontinue the action. *See* Trial Ct. Opinion, 2/11/22 at 3.

[4] This reduced amount represented a "discount if paid in full by [the] end of 2019." Complaint at ¶28 (citation omitted).

fees to be paid to Kleinbard and drawn from the District Attorney's Office legal account, and from the office's drug/alcohol diversionary program and bad check restitution program ("Program Accounts"). *See* Complaint at ¶¶21, 27, 29, 36.[5] More specifically, the completed voucher form indicated that, "[o]f the $74,193.06 payment to be made to Kleinbard, $69,193.06 of the payment was to be drawn from the District Attorney's Office's drug/alcohol diversionary program and the District Attorney's Office's bad check restitution program accounts," and "[o]nly $5,000 . . . was to be drawn from the District Attorney's Office's legal account utilizing taxpayer funds from the County Treasury." *Id*. at ¶¶30-31 (footnotes omitted); *accord* Lancaster County Voucher Form, 12/10/19 (reflecting that monies were to be drawn from three separate accounts in the amounts of $40,472.84, $28,720.22, and $5,000).

The commissioners refused to pay Kleinbard's bill. In October 2021, Kleinbard filed the underlying complaint against the Lancaster County District Attorney's Office, newly-elected District Attorney Heather Adams, the county commissioners, the county controller, and the county solicitor, seeking mandamus and damages for breach of contract, unjust enrichment/quantum meruit, and tortious interference. Kleinbard also filed a corresponding motion for peremptory judgment seeking to compel payment by the

---

[5] The Lancaster County District Attorney's Office website describes the Drug/Alcohol Diversion Program as follows: "The Drug and Alcohol Diversion Program is intended to divert minor drug and alcohol offenses at the district court level. Defendants charged with minor drug and alcohol offenses who wish to participate in the program must waive their preliminary hearing. The case then remains in the district court until the charge(s) is/are withdrawn upon successful completion of the program. If the defendant does not successfully complete the program, the case is returned to the Lancaster County Court of Common Pleas." *Drug/Alcohol Diversion Program – Pathways to Recovery*, LANCASTER CNTY. OFF. OF THE DIST. ATT'Y, https://www.co.lancaster.pa.us/1052/DrugAlcohol-Diversion-Program (last visited Dec. 9, 2024). The URL cited in the complaint as linking to the office's bad check restitution program is no longer valid. *See* Complaint at ¶30 n.2, *citing* https://www.co.lancaster.pa.us/445/Bad-Check-Program (last attempted Dec. 9, 2024).

commissioners of $74,193.06. Kleinbard's complaint alleged that $69,193.06 of its bill should be paid from the Program Accounts, which "are **not** County taxpayer funded but instead are funded by fees paid by participants" in the District Attorney's Office drug and alcohol diversionary and bad check restitution programs. Complaint at ¶30 (emphasis in original). According to the complaint, these are "District Attorney-controlled programs[,]" and the funds in the Program Accounts are therefore "beyond the purview and oversight authority" of the commissioners. *Id.* at ¶3. Kleinbard further alleged the Program Accounts were "not taxpayer funds subject to any degree of discretionary review or oversight by the County Commissioners or other County officials." *Id*. at ¶72 (emphasis omitted). Kleinbard also claimed "there is no requirement in the County Code that the County Commissioners or other County officials approve, issue and sign checks that involve non-taxpayer funds that are **not** drawn from the County Treasury." *Id*. at ¶73 (emphasis in original). Kleinbard further alleged that, "[u]pon information and belief," both the county controller and treasurer "approved payment of the full $74,193.06 to Kleinbard for the legal services it rendered to" Stedman and the District Attorney's Office. *Id*. at ¶32. According to Kleinbard, the commissioners had "no authority to block payments using non-taxpayer funds . . . such as the District Attorney-controlled" Program Accounts. *Id.* at ¶114.

Appellees filed preliminary objections, arguing Kleinbard was not entitled to payment because Stedman was not authorized to enter into a legal services agreement for more than the amount budgeted by the commissioners to his office. Appellees relied on the County Code, specifically 16 P.S. §1773(b), which was titled "Supplemental appropriations, transfers of funds and appropriation limits," and provided: "No work shall be hired to be done, no materials purchased, no contracts made and no order issued for the payment of any money by the county commissioners which will cause the sums

appropriated to be exceeded." 16 P.S. §1773(b), *repealed by* Act 14 of 2024, S.B. 945, 208th Gen. Assemb., Reg. Sess., Printer No. 1111 (Pa. 2024) (effective July 8, 2024).[6]

The court of common pleas[7] sustained the preliminary objections in part, allowing payment of $5,000 to Kleinbard, but dismissing with prejudice the remaining claims. The court cited the "general and fundamental principle of law that persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or its office[r]s to make the contract or incur the debt." *Kleinbard LLC v. Office of Dist. Attorney of Lancaster Cty.*, No. CI-21-06142, slip op. at 5 (C.P. Lancaster, Feb. 11, 2022) ("Trial Ct. Opinion"), *quoting*, *inter alia*, *Pittsburgh Baseball, Inc. v. Stadium Auth. of Pittsburgh*, 630 A.2d 505, 509 (Pa. Cmwlth. 1993). The court noted Kleinbard and Stedman "were specifically informed shortly after making their agreement that the County would not authorize payment of the fees" beyond the District Attorney's budgeted amount. *Id*. at 6. The court concluded the parties' agreement was thus unenforceable beyond $5,000, and in addition, the County Code precluded Stedman's use of funds from any other line item

---

[6] Following briefing in this case, the General Assembly unanimously enacted Act 14 of 2024, which Governor Josh Shapiro signed into law on May 8, 2024, and which became effective on July 7, 2024. *See* S.B. 945, 208th Gen. Assemb., Reg. Sess., Printer No. 1111 (Pa. 2024). Act 14 incorporated the freestanding County Code into Title 16 of the Pennsylvania Consolidated Statutes. To effectuate those changes, the General Assembly repealed the County Code in its entirety, including 16 P.S. §1773. However, aside from a few substantive changes not relevant here, Act 14 was generally intended to affect a "continuation" of the County Code, despite its repeal. *See id*. at §6; *id*. at §(6)(1) ("Except as otherwise provided in 16 Pa.C.S. Pts. I, II, III and IV, all activities initiated under [t]he County Code shall continue and remain in full force and effect and may be completed under 16 Pa.C.S. Pt. I, II, III, or IV."); *id*. at §6(2) ("Except as provided in paragraph (3), any difference in language between 16 Pa.C.S. Pts. I, II, III and IV and [t]he County Code is intended only to conform to the style of the Pennsylvania Consolidated Statutes and is not intended to change or affect the legislative intent, judicial construction or administration and implementation of [t]he County Code."). Notably, the substance of Section 1773 of the County Code is now found in 16 Pa.C.S. §14976 (Supplemental appropriations, transfers of money and appropriation limits).

[7] The Honorable Robert J. Eby sat by designation when the Lancaster County bench recused.

of his budget without the commissioners' approval of supplemental appropriations. *See id.* at 8, *citing* 16 P.S. §1773. The court ruled "that while there was an Agreement between the parties, . . . there was no breach of contract, no tortious interference, and no unjust enrichment relative to this matter[.]" *Id.* at 9.

A three-judge panel of the Commonwealth Court affirmed. *See Kleinbard LLC v. Office of Dist. Attorney of Lancaster Cty.*, No. 204 C.D. 2022, 2023 WL 3065855 (Pa. Cmwlth., Apr. 25, 2023) (unpublished memorandum). The panel held the District Attorney had no authority to enter into the contract with Kleinbard beyond the budgeted amount, regardless of the existence of the Program Accounts. The panel reasoned: "The fact that there may have been money elsewhere to pay the invoice is beside the point. The point rather is that Stedman could not enter into the contract[.] . . . He had no right to unilaterally enter into a contract for the payment for legal services that far exceeded his allotted budget for legal expenditures without first obtaining the Commissioners' approval." *Id.* at *4 (emphasis omitted). The panel also noted Kleinbard had not provided "any citation to or reference to where or by whom the drug/alcohol diversionary program account and the bad check restitution program account were created, nor have we been able to locate any information about the programs." *Id.* The panel stated it had "nothing . . . to reference with respect to the limitations, if any, on the use of the funds in such accounts[,]" and was "unable to confirm that Stedman was, in fact, entitled to use funds for a purpose other than that for which they are earmarked." *Id.* The panel opined that, even if he "had an indeterminate amount of resources at his disposal [it would] not change the fact that the engagement agreement was invalid because Stedman contracted for legal fees in an amount that exceeded his allotted legal fees budget." *Id.* The panel suggested the reason for this rule "is apparent. If a DA is allowed to contract for services over and above the assigned budget based on his belief that there will be available funds elsewhere to cover

the surplus debt, the County could be exposed to legal and budgetary accountability if that belief turns out to be wrong. Indeed, it is not at all clear that Stedman had unfettered authority to reallocate funds from the Program Accounts to pay for Kleinbard's legal fees." *Id*. at *4 n.5.

Kleinbard filed a petition for allowance of appeal, which we granted to consider the following questions:

1) Did the lower courts err when they applied 16 P.S. §1773 of the County Code to District Attorney-controlled accounts because the monies in those accounts are not appropriated from the County Treasury, and thus are not subject to the County Commissioners' discretion?

2) Did the lower courts misconstrue *Yost v. McKnight*, 865 A.2d 979 (Pa. Cmwlth. 2005), and related case law given that the District Attorney sought to draw monies from District Attorney-controlled accounts and therefore did not ask the County Commissioners for additional monies from the County Treasury?

3) Did the lower courts' holdings violate separation of powers principles by allowing the county Commissioners to interfere with the District Attorney's right to spend monies within his budget in order to defend against the Commissioners' illegal encroachment on his constitutional role in County government?

*Kleinbard LLC v. Office of Dist. Attorney of Lancaster Cty.*, 306 A.3d 1290 (Pa. 2023) (*per curiam*). We review the decision sustaining preliminary objections and dismissing the complaint to determine whether, "on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Allegheny Reprod. Health Ctr. v. Pa. Dep't of Human Servs.*, 309 A.3d 808, 849 (Pa. 2024) (citation omitted). Moreover, we must "accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (internal quotation marks and citation omitted). Mindful of these standards, we proceed to consider the first issue presented, and conclude it resolves the appeal.

## II.

Kleinbard argues the lower courts erred when they held as a matter of law, based on former Section 1773(b) of the County Code, that it is not entitled to payment from the Program Accounts. According to Kleinbard, Section 1773 applies only to "**appropriated** monies." Kleinbard's Brief at 20 (emphasis in original). This makes sense, Kleinbard argues, because the commissioners must assess the county's revenues and expenditures as well as appropriation requests made by county officers when making a budget, and Section 1773 "protects the commissioners' legislative prerogative regarding the budget." *Id*. at 21. But, Kleinbard claims, the statute has nothing to do with "non-appropriated money because such money was not distributed by the [c]ommissioners pursuant to their legislative authority." *Id*. Kleinbard asserts the Program Accounts "cannot fall within Section 1773's reach because they are participant funded and not funded by the commissioners." *Id*. at 22. According to Kleinbard, when the district attorney "spends monies from the Program Accounts, the Commissioners' budget is untouched: every appropriation is the same; the amount of taxpayer funds in the County treasury is the same; and the tax rate remains sufficient to fund the budget." *Id*. at 22-23. Kleinbard insists Section 1773(b) prohibits the district attorney only from making a contract that "will cause the sums appropriated to be exceeded" and "according to the well-pleaded facts in the Complaint — which the Commonwealth Court ignored — the contract did not cause the $5,000 appropriation to be exceeded." *Id*. at 23, 25 (emphasis omitted). Kleinbard focuses on the Commonwealth Court's "unwillingness to accept the well-pleaded fact" that Stedman had discretion to use the District Attorney-controlled Program Accounts to pay his legal bills in excess of the amount appropriated in his budget. *Id*. at 26. Kleinbard argues it is entitled to proceed to discovery about the Program Accounts because, at the preliminary objections stage, the "facts are simply that

the Program Accounts contain non-appropriated revenue that is separate from taxpayer monies in the County Treasury and over which the District Attorney has sole control." *Id*. at 27.

Appellees echo the lower courts' position that Stedman was unauthorized to make a contract for legal services that exceeded the $5,000 appropriation for such fees, without first obtaining approval from the commissioners. They argue the commissioners are the managers of the fiscal affairs of the county, and as such they have sole discretion over the budgeting process. *See* Appellees' Brief at 9, *citing* 16 P.S. §1701. They claim a district attorney must request a supplemental appropriation for additional funds pursuant to Section 1773(a), and failing that request and approval, there is no authority to make contracts to spend more than the allotted amount. Appellees reject the notion the Program Accounts may be used for anything at all by the District Attorney, "even if the use of such funds infringes on the County Commissioners' exclusive role of setting the budget for all county expenditures." *Id*. at 12. They claim Kleinbard's "simplistic analysis ignores that the Commissioners may consider all funds available to the District Attorney and all expenses when creating the annual budget[,]" and the Program Accounts "are necessarily intertwined with the County's budgeting process." *Id*. Moreover, appellees argue, whether Stedman "had sole control over the Program Accounts is a question of law, not fact[,]" and there was no error below when the preliminary objections were sustained and the claim for amounts in excess of $5,000 was dismissed. *Id*. at 13.[8]

---

[8] *Amicus Curiae* County Commissioners Association of Pennsylvania filed a brief in support of appellees. The Association argues county row officers like district attorneys may enter into contracts, but that authority is limited by former 16 P.S. §1773(b). It further claims Kleinbard has provided no legal authority for its position the Program Accounts are not county assets subject to the control and appropriation of commissioners, and allowing a county row officer to enter into contracts that exceed budgeted amounts would invade the statutory right and obligation of commissioners to determine priorities.

III.

The lower courts relied on provisions of the County Code for their conclusion that Stedman, as District Attorney, did not have the authority to enter into the contract with Kleinbard for legal services that cost more than his budgetary allocation of $5,000 for legal fees. First, they pointed to former Section 1701, which provided: "The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective counties in accordance with the provisions of this act and other applicable law." 16 P.S. §1701, *repealed by* Act 14 of 2024, S.B. 945, 208th Gen. Assemb., Reg. Sess., Printer No. 1111 (Pa. 2024).[9] Then, they relied on former Section 1773, which, as earlier noted, was titled "Supplemental appropriations, transfers of funds and appropriation limits," and specifically, paragraph (b):

(a) The commissioners may:

    (1) At any time, by resolution, make supplemental appropriations for any lawful purpose from any funds on hand or estimated to be received within the fiscal year and not otherwise appropriated, including the proceeds of any borrowing now or hereafter authorized by law.

    (2) Authorize the transfer of:

        (i) Any unencumbered balance of any appropriation item or any portion thereof.

        (ii) Within the same fund, any unencumbered balance or any portion thereof from one spending agency to another.

    (3) During the last fifteen days of a fiscal year, authorize the transfer of any unencumbered balance, or any portion thereof, from any county fund to any fund of the institution district, and to reappropriate that money to the institution district.

---

[9] A nearly identical provision to former Section 1701 of the County Code is now found at 16 Pa.C.S. §14901 ("The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective county in accordance with this part and other applicable law.").

**(b) No work shall be hired to be done, no materials purchased, no contracts made and no order issued for the payment of any money by the county commissioners which will cause the sums appropriated to be exceeded.**

16 P.S. §1773 (emphasis added).[10]  According to the Commonwealth Court, application of Section 1773(b) leads to the inescapable legal conclusion that Kleinbard is not entitled to relief, as its contract for legal services exceeded the sums appropriated to the District Attorney for such expenses, and the contract was therefore void *ab initio*.  *See Kleinbard*, 2023 WL 3065855, at *4 ("[Stedman] had no right to unilaterally enter into a contract for the payment for legal services that far exceeded his allotted budget for legal expenditures without first obtaining the Commissioners' approval.").

But the Commonwealth Court also rejected Kleinbard's argument that the Program Accounts were available to Stedman for payment of his legal bills, as an alternative (or a supplement) to the Commissioners' budgeted appropriation.  The panel admitted it had no details about the nature of the Program Accounts, and could not be sure whether Stedman had, as a matter of fact, the right to use those funds to pay for legal fees:

> Kleinbard has not provided the Court with any citation to or reference to where or by whom the drug/alcohol diversionary program account and the bad check restitution program account were created, nor have we been able to locate any information about the programs.  Accordingly, there is nothing for this Court to reference with respect to the limitations, if any, on the use of the funds in such accounts.  Therefore, we are unable to confirm that Stedman was, in fact, entitled to use funds for a purpose other than that for which they are earmarked.

---

[10] Again, the substance of Section 1773(b) has simply been moved to 16 Pa.C.S. §14976 and slightly reworded.  *See* 16 Pa.C.S. §14976(b) ("The county commissioners may not do any of the following which would cause the sums appropriated to be exceeded: (1) Hiring work to be done. (2) Purchasing materials. (3) Making a contract. (4) Issuing a payment order.").

*Id*.  The panel took this view even though the matter was before it on an appeal from preliminary objections, and in reviewing the trial court's decision, it had the obligation to accept as true the well-pleaded facts in the complaint as well as every inference fairly deducible from those facts.  *See Raynor*, 243 A.3d at 52.  Moreover, the panel apparently ignored the rule that, to the extent it had doubts about the facts alleged in the complaint, it should resolve those doubts in favor of overruling the demurrer.  *See Allegheny Reprod. Health Ctr.*, 309 A.3d at 849.

Specifically, when it declared its uncertainty about the nature of the Program Accounts, and Stedman's authority to use them, the panel disregarded Kleinbard's factual allegation they "are **not** County taxpayer funded but instead are funded by fees paid by participants" in the District Attorney's Office drug and alcohol diversionary and bad check restitution programs.  Complaint at ¶30 (emphasis in original).  The panel also failed to take as true Kleinbard's factual allegation these are "District Attorney-controlled programs."  *Id*. at ¶3.  We are unpersuaded by appellees' assertion the issue of whether the District Attorney controls the Program Accounts is a question of law, particularly where they have presented neither facts nor legal support for that position.  Appellees simply state the Program Accounts "are necessarily intertwined with the County's budgeting process[,]" Appellees' Brief at 12, but fail to explain more about what they are and how they operate.  Indeed, neither the panel below nor appellees seem to have this information.  Kleinbard, on the other hand, alleges the Program Accounts are funded independently from the monies used by the commissioners for their County Code appropriations; appellees and Kleinbard clearly see the operative facts differently, but

material disputes of fact preclude demurrer.[11]  Where Kleinbard's complaint was dismissed at the preliminary objections stage, it was error for the panel to affirm on the basis it was "unable to confirm" the nature of the Program Accounts.  *Kleinbard*, 2023 WL 3065855, at *4.  Instead, the lower courts should have taken Kleinbard's allegations as true and assessed the legal viability of its claim in the context of those facts.

The factual allegations in the complaint, taken as true, establish the Program Accounts are funded by fees paid by participants in the drug and alcohol diversionary and bad check restitution programs controlled by the District Attorney.  These facts — if true — remove the Program Accounts from the purview of the prohibition in Section 1773(b) (now 16 Pa.C.S. §14976(b)) regarding Commissioner-appropriated sums.  *See* 16 P.S. §1773(b) ("No work shall be hired to be done, no materials purchased, no contracts made

---

[11] The dissent ignores this factual dispute and pretends the ultimate question of the District Attorney's authority over the Program Accounts can be answered without factfinding about the nature and source of the funds.  But it cannot, and this is exactly when a demurrer should be overruled — we neither change any standards nor "flip" any burdens.  Dissenting Opinion at 2, 5.  We also reject the dissent's position Kleinbard's "failure to point to a statutory authority for the creation of the Program Accounts and a district attorney's unfettered discretion to expend funds contained in the accounts should have been the end of the case." *Id*. at 5-6.  As the concurrence points out, unlike drug forfeiture funds, which are expressly regulated by statute, it seems the General Assembly may presently be unaware of the collection and use of these types of funds by district attorneys, which could explain the apparent absence of laws directly governing them. *See* Concurring Opinion at 8 ("If it is true that our law gives district attorneys — without any transparency or oversight — carte blanche to spend money that was intended to fund diversionary programs, the General Assembly should consider changing the law.").  We join the concurrence in urging the General Assembly to address the matter, but unlike the dissent, we do not fault Kleinbard for failing to identify in its complaint statutes it does not believe exist.  Again, Kleinbard's bottom line is that the Program Accounts contain non-appropriated revenue that is separate from taxpayer monies in the county treasury and over which the District Attorney has sole control — in other words, that the funds in the Program Accounts fall outside the purview of former 16 P.S. §1773(b) or any other statute. The only way to resolve that legal question is to first establish the relevant facts, but the lower courts erroneously prevented Kleinbard from getting that far.

and no order issued for the payment of any money by the county commissioners which will cause the sums appropriated to be exceeded."). Although discovery may yield information that undermines Kleinbard's entitlement to payment from these funds, the decision to deny relief as a matter of law at the preliminary objections stage was premature.[12]

IV.

Accordingly, we hold the Commonwealth Court erred in affirming the trial court's order sustaining appellees' preliminary objections in the nature of a demurrer. The Commonwealth Court's order is reversed, and the matter remanded to the trial court for further proceedings. Jurisdiction relinquished.

Chief Justice Todd and Justices Wecht, Mundy, Brobson and McCaffery join the opinion.

Justice Wecht files a concurring opinion in which Justice McCaffery joins.

Justice Donohue files a dissenting opinion.

---

[12] For similar reasons, *Yost v. McKnight*, 865 A.2d 979 (Pa. Cmwlth. 2005), is irrelevant at this juncture. The *Yost* court considered the district attorney's authority to hire a special assistant when the county budget included funds earmarked for this use. *See Yost,* 865 A.2d at 985-86. As we conclude the allegations in Kleinbard's complaint establish the Program Accounts are not budgeted or "appropriated" by the commissioners, we need not address this additional basis for the Commonwealth Court's decision. We also do not reach Kleinbard's third issue presented for appeal because our holding on the first is dispositive in its favor.